## THE PEOPLE *v.* PINTO.

### APPEAL from the District Court of Arecibo.

No. 186.—Decided December 22, 1909.

ADULTERATED MILK.—In order to reach the conclusion that a person is guilty of the crime defined and punished by section 337 of the Penal Code, it·is necessary to show that such person adulterated or diluted milk, with the fraudulent intention of offering or of permitting it to be offered for sale as pure and undiluted, or that he fraudulently sold, had or offered such milk for sale as pure and undiluted.

ID.—EVIDENCE—FUNDAMENTAL· ERROR.—In this case the accused attempted to offer evidence tending to show that it was possible for milk to contain one degree less of fat than the rule established by the sanitary regulations requires, and the judge excluded such evidence. *Held:* That it was error for the court to confine the expert opinion to the question whether or not the milk sold came up to the required standard, since defendant was not being prosecuted for the violation of the sanitary regulations, but for the crime defined and punished by the Penal Code.

The facts are stated in the opinion.

*Mr. Santoni* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The case originated in a sworn complaint charging Julio Pinto with the commission of the following act:

"That on March 3, of this year, in the town of Manatí and judicial district of the District Court of Arecibo, then and there the said Julio Pinto fraudulently had and offered for sale, as pure, adulterated cows' milk."

The accused having pleaded not guilty, the court proceeded to hold the trial, and the evidence having been heard, the district court of Arecibo found said defendant guilty of the crime against the public health, defined in section 337 of the Penal Code, and sentenced him to two months in jail, $100 fine and to the payment of the costs.

Not being satisfied with this sentence, the defendant took an appeal to this Supreme Court, and for that purpose prepared a bill of exceptions, wherein the only exception which appears to have been taken by the accused during the trial is set forth; that exception is as follows:

"In support of his allegations the defendant introduced as experts Clemente Ramírez and Oluf Mayland to analyze the milk contained in the bottle which was identified, and to which reference has been heretofore made, in order that they may state the result of their analyses."

The court admits the evidence of the said experts, they to confine their examination to determining whether the milk contains three per cent of fat, or more or less, and 88 per cent of water, or more or less, and that their expert opinion be confined to those matters solely, as the question involved is one of purely a legal character. The other expert, Mr. Ramírez, was called and given like instructions. The defendant took an exception to the ruling of the court, confining the experts' opinion to the points above mentioned.

In order to be able clearly to understand what was the opinion of the trial judge, the following extract from the bill of exceptions is here transcribed:

"At this point counsel for the defendant propounded the following question: 'Aside from those rules, according to scientific rules, can or cannot milk contain 11.5 per cent?' The court ruled that the witness should not answer the question, because it should refer to the standard established by the regulations."

In the opinion of the trial judge then, it was sufficient to show that the milk seized in the possession of Pinto did not come up to the standard required by the sanitary regulations, in order that said milk should be considered to have been adulterated.

If an infraction of the sanitary regulations had been involved, then we would have concurred in the opinion of the trial judge, but since the crime charged is defined by section 337 of the Penal Code, we hold otherwise. Section 337 as amended by the Act of March 11, 1909, reads as follows:

"Every person who adulterates or dilutes any article of food, drink, drug, medicine, spirituous or malt liquor, or wine, or any article useful in compounding them, with a fraudulent intent to offer the same, or cause or permit it to be offered for sale, as unadulterated or undiluted, and every person who fraudulently sells, or keeps or offers for sale the same, as unadulterated or undiluted, is guilty of a misdemeanor and shall be punished by a fine not exceeding one hundred dollars or imprisoned in jail not exceeding three months, and in addition to such punishment the adulterated article shall be confiscated. In all cases in which the adulterated article is milk, the person guilty of such adulteration, keeping or offering for sale such article, shall be sentenced to imprisonment for a term of from two to six months and fined from thirty to one hundred dollars; *Provided,* That the person found guilty a second time of adulteration, keeping or selling adulterated milk shall be punished by imprisonment for a term of from six months to one year, and fined from one hundred to three hundred dollars, and his license shall be revoked. The sentence imposed on such person shall be published in two of the papers having the largest circulation in the Island, and shall also be made known by means of bills which shall be posted in public places and at the domicile or establishment of the guilty person, all of which shall be paid for by such person."

Confining ourselves to the milk, because it is clearly seen that, in order to reach the conclusion that a person is guilty under that section, it is necessary to show that such person adulterated or diluted milk for the fraudulent purpose of offering or causing and permitting the same to be offered for

sale as pure or unadulterated, or that he fraudulently sold, kept or offered the said article for sale as pure and unadulterated.

And confining ourselves even more to the concrete case in question, in accordance with the information and the law, it was necessary to prove that the accused, Pinto, fraudulently kept and offered adulterated cows' milk for sale as pure milk.

The word "adulterated" is defined by Webster as " the act of adulterating; corruption or abasement (especially food or drink) by a foreign mixture." The same word is defined by Bouvier as follows: "Adulteration: The act of corrupting or debasing; the act of mixing something impure or spurious with something pure or genuine, or an inferior article with a superior one of the same kind." And, according to Escriche, to adulterate means to commit adultery and also to falsify or counterfeit a thing, such as money, precious metals, etc. (See *Falsedad* and *Falsario.*)

Taking the spirit of the statute above cited, which requires the existence of a fraudulent intent and in which the word "pure" is employed in contradistinction of the word "adulterated" and in which no "rule" whatever is established, and taking into consideration the nature of the offense, and the word used to designate the guilty party, and considering the definition quoted from Webster's, Bouvier and Escriche, we come to the conclusion that the evidence tending to show that the milk did not come up to the standard established by the sanitary regulations is not conclusive proof that such milk was adulterated, because it is well known that under certain circumstances, milk taken directly from a cow may fall below the standard required thereby.

So that in deciding that it was sufficient to prove that the milk did not come up to the standard required by the sanitary regulations, in order to conclude that the milk was adulterated and, in confining the expert opinion to that point alone, the trial judge committed a substantial error which renders the

judgment null and void because in this case, as we have said before, an infraction of the sanitary regulations is not involved, but this is a prosecution and punishment for the crime defined and punished by the Penal Code.

The judgment must be reversed and the record returned to the district court with the order that a new trial be held or that any other action be taken which may be proper in the premises.                                              *Reversed.*

Mr. Chief Justice Hernández and Mr. Justice Wolf concurred.

Mr. Justice Figueras concurred in the result.

Mr. Justice MacLeary dissented.